# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

IRWIN HOLDINGS, LLC, et al.,     )
                                )
     Plaintiffs,            )
                                )
v.                           )     Case No.:  2:18-cv-00774-SGC
                                )
WEIGH TO WELLNESS, LLC,     )
                                )
     Defendant.           )

## MEMORANDUM OPINION & ORDER[1]

Irwin Holdings, LLC, and American Family Care, Inc., commenced this action against Weigh to Wellness, LLC, under the Lanham Act, 15 U.S.C. § 1051, *et seq*. (Doc. 1). Pending before the undersigned is the defendant's motion seeking dismissal under Rule 12(b)(6) of the *Federal Rules of Civil Procedure* or, alternatively, summary judgment under Rule 56 of those rules. (Doc. 8). For the reasons discussed below, the defendant's motion is due to be denied.

## I. Facts

American Family Care is a national network of medical clinics that provides primary, family, urgent, occupational, and outpatient care. (Doc. 1 at ¶ 10). Additionally, it offers its patients a medically-supervised weight loss program called "WeighToLive." (*Id.*). Irwin Holdings filed an application for registration

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 11).

of the mark "WeighToLive" (the "WTL mark" or the "plaintiffs' mark") on March 16, 2015, and obtained registration of the mark on June 14, 2016. (*Id.* at ¶ 10; Doc. 1-1; Doc. 1-3 at pp. 5-7). It licenses the WTL mark to American Family Care. (Doc. 1 at ¶ 11). In their complaint, the plaintiffs allege the WTL mark has been used in connection with the weight loss program offered by American Family Care since at least February 1, 2014. (*Id.* at ¶¶ 12-13). The application for registration of the WTL mark, as well as the certificate of registration for the mark, identifies February 1, 2014 as the mark's date of first use. (Doc. 1-1 at p. 2; Doc. 1-3 at p. 6).

The defendant operates a medically-supervised weight loss program called "WeighToWellness" (the "WTW mark" or the "defendant's mark") in the same Birmingham, Alabama market where several American Family Care clinics are located. (Doc. 1 at ¶¶ 15-17). Leslie Ellison formed the defendant in January 2014. (Doc. 8-1 at ¶ 6; Doc. 8-4). During that same month, she procured a license to use "obesity management lifestyle modification" software in the defendant's name, purchased the domain names www.weightowellnessllc.com and www.weightowellnessbham.com, and contracted an architectural firm to design a physical office space for the defendant. (Doc. 8-1 at ¶¶ 4-5, 7; Doc. 8-2; Doc. 8-3; Doc. 8-5). In April 2014, Ellison retained a construction company to build out the space. (Doc. 8-1 at ¶ 8; Doc. 8-6). Also in April 2014, the defendant purchased a

banner bearing the WTW mark to promote its opening. (Doc. 8-1 at ¶ 9; Doc. 8-7). The defendant began displaying the banner in May 2014. (Doc. 8-1 at ¶ 9; Doc. 8-7). The defendant purchased a sign bearing the WTW mark in June 2014 and began displaying the sign in July 2014. (Doc. 8-1at ¶ 10; Doc. 8-8). Also in June 2014, the defendant purchased and began distributing promotional merchandise (e.g., pens, water bottles, plastic bags) bearing the WTW mark, procured and distributed business cards and letterhead bearing the WTW mark, and began selling to the public privately-labeled products (e.g., meal replacements and protein supplements). (Doc. 8-1 at ¶¶ 11-13; Doc. 8-9; Doc. 8-10).[2] The defendant began what it describes as "extensive" advertising using the WTW mark in community newspapers and through digital means and printed brochures in July 2014. (Doc. 8-1 at ¶ 14; Doc. 8-11).[3] It began advertising through a Facebook account shortly after opening and through an Instagram account in January 2015. (Doc. 8-1 at ¶ 15; Doc. 8-12).

On June 2, 2015, the plaintiffs sent a letter to the defendant, demanding it immediately cease and desist use of the WTW mark on the grounds such use was likely to cause confusion amongst consumers and infringed on the plaintiffs' mark. (Doc. 1 at ¶ 18; Doc. 1-3). Ellison was not aware American Family Care offered a

---

[2] Invoices indicate the defendant purchased 500 pens, 500 water bottles, 3,000 plastic bags, 4,000 business cards, 1,000 pieces of letterhead, 1,000 envelopes, and 300 cards bearing the WTW mark. (Doc. 8-9 at pp. 2-4; Doc. 8-10 at pp. 2-3).

[3] The defendant has submitted select advertisements and a list of the community newspapers in which it has advertised since the summer of 2014. (Doc. 8-1 at ¶ 14(a)-(c); Doc. 8-11).

weight loss program or was using the WTL mark, or that Irwin Holdings had applied for registration of the mark, until she received the cease-and-desist letter. (Doc. 8-1 at ¶ 16). By a letter dated June 26, 2015, the defendant refused to discontinue use of the WTW mark, stating it believed the plaintiffs' claim of potential marketplace confusion was exaggerated. (Doc. 1 at ¶ 19; Doc. 1-4). Because the plaintiffs directed no further correspondence to the defendant, Ellison believed the plaintiffs were satisfied with the defendant's response and considered the matter closed. (Doc. 8-1 at ¶ 17).

The plaintiffs commenced this action on May 22, 2018, asserting claims against the defendant for trademark infringement under 15 U.S.C. § 1114(1)(a) and unfair competition under 15 U.S.C. § 1125(a)(1). (Doc. 1 at ¶¶ 14, 21-36).[4] They seek an order permanently enjoining the defendant from using the WTW mark, as well as money damages. (*Id.* at ¶¶ 37-40, pp. 9-10). In response to the complaint,

_____

[4] A trademark identifies the source of goods, while a service mark identifies the source of services. *See* 15 U.S.C. § 1127 (defining "trademark" and "service mark"); *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1260-61 (11th Cir. 2017) (discussing distinct but similar purposes of trademarks and service marks), *cert. denied*, 139 S. Ct. 57 (2018); *Univ. of Florida v. KPB, Inc.*, 89 F.3d 773, 775 n.4 (11th Cir. 1996) ("A 'service mark' is identical to a trademark in all respects except that it is intended to indicate the origin of services, rather than goods."). The parties refer to their respective marks without making clear whether they are trademarks or services marks, although the plaintiffs do identify their § 1114(1)(a) claim as one for trademark infringement. (*See generally* Docs. 1, 8, 16 & 17). For the purpose of this memorandum opinion and order, the undersigned adopts the parties' terminology and notes that analysis of an infringement claim is usually the same whether it relates to a trademark or a service mark. *See Tana v. Dantanna's*, 611 F.3d 767, 772 n.3 (11th Cir. 2010) ("The analysis is the same for service mark and trademark infringement."); *Savannah Coll. of Art & Design*, 872 F.3d at 1261 ("In most respects, the analysis is the same [for trademarks and service marks] and courts thus treat the two terms as interchangeable in adjudicating infringement claims." (internal quotation marks omitted)).

the defendant filed its motion seeking dismissal under Rule 12(b)(6) or, alternatively, summary judgment under Rule 56. As grounds for its motion, the defendant argues the plaintiffs' claims are barred by the doctrine of laches and, alternatively, that it is entitled to summary judgment based on its status as a prior user under 15 U.S.C. §§ 1057(c)(1) and 1115(b)(5).

## II. Standards of Review

### A. Motion to Dismiss

Dismissal under Rule 12(b)(6) is appropriate if a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotations omitted).

## B. Motion for Summary Judgment

Under Rule 56 of the *Federal Rules of Civil Procedure*, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute as to a material fact for trial. *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 248. If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III. Discussion

### A. Laches Defense

The Lanham Act does not provide a statute of limitations for claims brought thereunder. *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). Instead, the timeliness of a Lanham Act claim is assessed by reference to the equitable doctrine of laches. *Solar Reflections, LLC v. Solar Reflections Glass Tinting, LLC*, 256 F. Supp. 3d 1248, 1253 (N.D. Ala. 2017) (citing *Kason Indus.*, 120 F.3d at 1203; *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1517 (11th Cir. 1984)); *see also* 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:1 (5th ed.) ("Laches is an old equitable defense analogous in purpose to the statute of limitations."). Although laches is a flexible doctrine, a defendant must demonstrate three elements for its successful application barring a Lanham Act claim: (1) that the plaintiff delayed in asserting a right, (2) that the delay was not excusable, and (3) that the defendant was unduly prejudiced by the delay. *Kason Indus.*, 120 F.3d at 1203 (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986)).

Additionally, a court must consider the public's interest in a trademark as "a definite designation of a single source of the goods." *Conagra*, 743 F.2d at 1517 (noting that public interest in avoiding confusion might outweigh any prejudice suffered by defendant). Thus, even where a defendant is able to establish the three

requisite elements of a laches defense, if the likelihood of confusion is inevitable or so strong as to outweigh the prejudicial effects of a plaintiff's delay in bringing suit, a court may in its discretion grant injunctive relief. *Kason Indus.*, 120 F.3d at 1207 (holding that this discretion does not apply exclusively to cases of intentional infringement); *see also Univ. of Pittsburgh v. Champion Prods., Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982) (describing the "common situation" where a plaintiff's delay "will bar its clam for an accounting for past infringement but not for prospective injunctive relief") (cited favorably in *Kason Indus.*).  This requires "careful, fact-intensive consideration." *Kason Indus.*, 120 F.3d at 1207.

Delay should be measured from the time a plaintiff knew or should have known it had a provable claim for infringement. *Id.* at 1206 (noting any other rule would require trademark owner to " 'sue first and ask questions later'" (quoting J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 31.19) (4th ed. 1997)).  Relevant to when a plaintiff knew or should have known of a claim are considerations of progressive encroachment, damage the plaintiff was suffering, and the likelihood of confusion at the time of suit. *Id.* (holding that where plaintiff contended defendant slowly encroached on its market, district court should have determined point at which plaintiff could have demonstrated likelihood of confusion in its primary market for purposes of analyzing laches defense).

Courts in the Eleventh Circuit apply the statute of limitations for "analogous state law claims" as the "touchstone for delay" in trademark cases. *Kason Indus.*, 120 F.3d at 1203 (citing *AmBrit*, 812 F.2d at 1546). Otherwise put, the analogous state law limitations period is the reference point for the measure of acceptable delay in asserting a trademark claim (or whether there has been any delay at all). Decisions emanating from this court are not entirely consistent as to the Alabama law analogous to the Lanham Act. *See Solar Reflections*, 256 F. Supp. 3d at 1254-55 (suggesting Alabama Trademark Act, to which two-year residual statute of limitations provided by Ala. Code § 6-2-38(l) presumably applies, is state law analogous to Lanham Act); *Hibbett Sporting Goods, Inc. v. Hibbett Patient Care, LLC*, 2014 WL 12603509, at *3 (N.D. Ala. Oct. 3, 2014) (assuming without deciding that Alabama Deceptive Trade Practice Act's one-year statute of limitations applies to Lanham Act claims); *Thompson v. Town of Double Springs*, 2005 WL 8157964, at *1 (N.D. Ala. Aug. 29, 2005) (holding that Lanham Act borrows one-year statute of limitations applicable to Alabama Deceptive Trade Practices Act).

The defendant argues that whether the Alabama Deceptive Trade Practice Act's one-year limitations period or the Alabama Trademark Act's two-year limitations period is the appropriate touchstone, the element of delay is established because the plaintiffs were aware of the defendant's mark no later than June 2,

2015, the date of the cease-and-desist letter they directed to the defendant, and did not commence this action until nearly three years later, on May 22, 2018. (Doc. 8 at pp. 6-8). The defendant further claims the delay is inexcusable. (*Id.* at p. 8). The plaintiffs do not contest the defendant's measure of delay or offer an excuse for the period that elapsed between their cease-and-desist letter and their commencement of this action. The crux of the parties' dispute on the issue of laches is whether (1) the defendant has been unduly prejudiced and (2) there is a likelihood of confusion so great that the public's interest in the plaintiffs' mark as a definite designation of a single source of goods and/or services outweighs any prejudice suffered by the defendant.

According to the defendant, it suffered undue prejudice because the money damages the plaintiffs now seek will be greater, and any injunction issued more disruptive, than had the plaintiffs timely asserted their claims. (Doc. 8 at pp. 8-9; Doc. 17- at pp. 5-6). Given the plaintiffs have not yet quantified the damages they seek, the defendant's first basis for undue prejudice is, at this point, speculative. Moreover, absent citation to binding or persuasive authority to the contrary, the undersigned is dubious that the mere possibility delay could increase a defendant's financial exposure demonstrates undue prejudice. Such a low hurdle would render the undue prejudice requirement mostly meaningless and make a laches defense

available to virtually any trademark infringement defendant who could show inexcusable delay.

Elaborating on its second basis for undue prejudice, the defendant claims that during the period of the plaintiffs' delay, it continued to invest in and advertise the goods and/or services signified by its mark and accrue goodwill associated with the mark. (Doc. 17 at pp. 5-6). This is known as "economic prejudice." *See* 6 MCCARTHY, *supra*, § 31:12 ("Economic or expectation-based prejudice encompasses actions made by the defendant that it would not have taken or consequences it would not have experienced had the plaintiff brought suit promptly."); *Groucho's Franchise Sys., LLC v. Gelco of GA, Inc.*, 2016 WL 7887996, at *4 (N.D. Ga. Aug. 24, 2016) ("Undue prejudice 'may be shown if the plaintiff's unexcused failure to exercise its rights caused the defendant to rely to its detriment and build up a valuable business around its trademark.'" (quoting *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 795 (7th Cir. 2002))), *aff'd*, 683 F. App'x 826 (11th Cir. 2017); *Solar Reflections*, 256 F. Supp. 3d at 1256 (noting defendant had not been "lulled by plaintiff's silence into further investment or reliance on the [trademark].").

The plaintiffs argue there can be no undue prejudice where one party relies not on another's inaction but, rather, as did the defendant, on its own opinion it is not infringing on the other party's mark. (Doc. 16 at pp. 4-6). *See Citibank, N.A.*

*v. Citibanc Group, Inc.*, 724 F.2d 1540, 1546-47 (11th Cir. 1984) (noting that defendants had not relied on plaintiff's delay in expanding use of mark but, rather, had expanded use while asserting right to do so in face of plaintiff's constant complaints). The defendant challenges the legal soundness of the plaintiffs' argument and, also in reply, claims its continued investment and advertising was in reliance both on its own assessment of non-infringement and on its belief that its response to the cease-and-desist letter had satisfied the plaintiffs. (Doc. 17 at pp. 3-5).

It is not necessary to determine whether the plaintiffs' reliance argument is meritorious because questions of fact preclude a determination the defendant made so great an investment in the goods and/or services bearing its mark between June 2015 and May 2018 that allowing the plaintiffs' claims to proceed would cause it prejudicial economic detriment. It is not clear from the face of the complaint that the defendant has suffered such detriment. *See Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F. Supp. 1268, 1280 (M.D. Fla. 2015) (noting that while some courts consider laches an unsuitable basis for dismissal at the pleading stage because it is a fact-intensive affirmative defense, a complaint is subject to dismissal under Rule 12(b)(6) *if* the complaint on its face shows that the doctrine bars relief). Moreover, the defendant has not submitted any evidence quantifying its claimed investment, advertising or otherwise, during this period, nor has it

attempted to substantiate the goodwill it purports to have accrued.  The cases cited by the defendant itself in support of its undue prejudice argument show that more is required to support a finding of undue prejudice.  *See Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1194 (N.D. Cal. 2015) (holding that defendant demonstrated economic prejudice by producing "substantial evidence detailing its efforts through the period of [the plaintiff's] delay to build its business, generating substantial sales, hiring large numbers of employees, and developing products . . . offer[ed] under [its] well-known [] mark[,] [which] efforts[] and [] products[] garnered awards and substantial media coverage"); *Trs. of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 753 (S.D.N.Y. 1997) (holding that defendant demonstrated prejudice by producing evidence it spent millions of dollars developing programs prominently featuring its mark, advertising and promoting its facilities, changing the names of its hospitals, and developing new unified design and brand campaign); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996) (affirming district court's holding that defendant was prejudiced by plaintiff's delay where defendant produced evidence it "committed massive resources" to its marketing strategy before plaintiff brought Lanham Act claims); *see also Groucho's Franchise Sys.*, 2016 WL 7887996, at *4 (holding that defendant provided sufficient evidence of undue prejudice where it asserted it had spent nearly $50,000 in advertising its mark and more than three million in

operating its restaurant during period of plaintiff's delay). For the foregoing reasons, the defendant has failed to establish a laches defense.[5]

### B. Prior Use Defense

To prevail on a claim of infringement of a registered mark under § 1114(1)(a) or unfair competition under § 1125(a)(1), a plaintiff must show that (1) its mark has priority of use and (2) the defendant's mark is likely to cause consumer confusion. *Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (reciting elements of § 1114(1)(a) claim); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (reciting elements of § 1125(a)(1) claim); *see also Compton v. Fifth Ave. Ass'n, Inc.*, 7 F. Supp. 2d 1328, 1331 (M.D. Fla. 1998) (explaining that an essential element of an infringement claim under § 1114(1)(a) is ownership of a mark, which is determined by priority of use); *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use."), *as modified*, 97 F.3d 1460 (9th Cir. 1996).

The act of filing an application for registration constitutes constructive use contingent on final registration and confers a nationwide right of priority on the registrant dating back to the application date. *See* 15 U.S.C. §§ 1057(b) and (c),

---

[5] Because the insufficient evidence of undue prejudice is fatal to the defendant's laches defense, the undersigned declines to address the question of confusion countervailing any such prejudice at this stage of the litigation.

1115(a).  The plaintiffs filed an application to register their mark on March 16, 2015.  (Doc. 1-3 at pp. 5-7).  Because the application became a successful registration (Doc. 1-1), a constructive use date of March 16, 2015, applies to the plaintiffs' mark.

Section 1057(c)(1) provides that this right of priority does not apply against a party who made actual use of the mark prior to the registrant's constructive use. *See* § 1057(c)(1); *see also Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) ("The territorial rights of a holder of a federally registered trademark are always subject to any superior common law rights acquired by another party through actual use prior to the registrant's constructive use."); 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:18.50 (5th ed.) ("Neither application for nor registration of a mark at the federal level wipes out the prior nonregistered, common law rights of others.  The nonregistered rights of a senior user are not erased by the later federal registration of a junior user.").  Similarly, § 1115(b)(5) provides a defense to a party who "adopted [a mark] without knowledge of the registrant's prior use" and has used the mark "from a date prior to [] the date of constructive use of the mark established pursuant to section 1057(c)." *See* § 1115(b)(5); 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26:44 (5th ed.) (explaining that § 1115(b)(5) aids an "intermediate

junior user" – a party whose actual use of a mark post-dates a registrant's actual use of a mark but pre-dates the registrant's constructive use of the mark).

The defendant argues the plaintiffs' § 1114(1)(a) infringement claim fails because the evidence shows the defendant made actual use of its mark before the plaintiffs applied for registration of their mark. (Doc. 8 at pp. 9-14; Doc. 17 at pp. 7-9). The plaintiffs argue the question is not whether the defendant made actual use of its mark before the plaintiffs applied for registration of their mark but, rather, whether the defendant made actual use of its mark before the plaintiffs made actual use of their mark. (Doc. 16 at pp. 6-9). In other words, the plaintiffs claim to rely on their date of actual use of their mark to establish priority, not on their constructive use date.

The plaintiffs' argument fails not as a legal premise but, rather, on the evidence – or lack of evidence – the plaintiffs offer to support it.[6] While the

---

[6] The defendant suggests §§ 1057(c)(1) and 1115(b)(5) preclude a registrant from establishing priority through actual use. This is mistaken. *See* ANNE GILSON LALONDE, ET AL., TRADEMARK PROTECTION AND PRACTICE § 3.03[3][c] (2006) (explaining that in the case of an application for registration based on actual use, rather than intent to use, constructive use is a "meaningless advantage" with respect to geographic area(s) of pre-application use because the "[a]ctual use priority date must necessarily be earlier"); *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1039-40 (N.D. Cal. 2015) (noting that plaintiff could claim priority of use by showing either constructive or actual use predating defendant's actual use); *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 352-54, 359-60 (6th Cir. 1998) (affirming district court's determination of priority based on comparison of one party's date of actual use with other party's date of actual use preceding the date of its application for registration); *Harod v. Sage Products, Inc.*, 188 F. Supp. 2d 1369, 1375-78 (S.D. Ga. 2002) (comparing non-registrant's actual use of mark with registrant's actual use of mark predating its constructive use

plaintiffs allege in their complaint that they made actual use of their mark at least as early as February 1, 2014, they cannot rest on this pleading in opposing the defendant's motion for summary judgment but, rather, must come forward with evidence to support their alleged date of first actual use.  *See Celotex Corp.*, 477 U.S. at 324.  The only purported evidence to which the plaintiffs point is the certificate of registration for their mark, which identifies February 1, 2014, as the mark's date of first use.  (Doc. 1-1).  However, this is not in fact evidence of the date the plaintiffs first made actual use of the mark.  *See* 2 McCarthy, *supra,* § 16:19 ("A use-based registration is not proof of use dating back to the date of first use claimed in the application.  It is evidence of first use only as of its filing date."); 37 C.F.R. § 2.122(b)(2) (providing that in *inter partes* proceeding, "[t]he allegation in an application for registration, or in a registration, of a date of use is not evidence on behalf of the applicant or registrant" but, rather, "a date of use of a mark must be established by competent evidence"); *MPC Franchise, LLC v. Tarntino*, 19 F. Supp. 3d 456, 483-84 (W.D.N.Y. 2014) (plaintiff could not rely on allegation of first use claimed in application for registration to prove priority), *aff'd*, 826 F.3d 653 (2d Cir. 2016); *Sam's Riverside, Inc. v. Intercon Sols., Inc.*, 790 F. Supp. 2d 965, 977 n.17 (S.D. Iowa 2011) (holding that certificate of

---

for purposes of determining priority); *Daniel Grp. v. Serv. Performance Grp., Inc.*, 753 F. Supp. 2d 541, 547 (E.D.N.C. 2010) (same); *Tinker, Inc. v. Poteet*, 2017 WL 4351304, at *6 (N.D. Tex. Sept. 30, 2017) (same).

registration was evidence of use dating back to date of application for registration, but not evidence of use dating back to date of first use claimed by registrant and stated on certificate); *Angel Flight of Georgia, Inc. v. Angel Flight Southeast, Inc.*, 2006 WL 8444582, at *17 (N.D. Ga. Nov. 20, 2006) ("Not only does the date of first use stated in an application not establish the date the registrant can claim nationwide rights in a mark, such stated first use in an application does not even provide any proof of use whatsoever."); *Tzu Wei Chen Food Co. v. Chia-Chi Enters., Inc.*, 73 F.3d 379, at *2 (Fed. Cir. 1995) ("Allegations in a trademark application of a date of use [] are not evidence of such use."); *Harvey Aluminum (Inc.) v. American Screen Prods. Co.*, 305 F.2d 479, 481 (C.C.P.A. 1962) (holding that party could not rely on allegation of first use set out in its own registration to establish priority because registration establishes use only as of filing date). Absent evidence of a date of first actual use, the earliest date of use on which the plaintiffs may rely is their constructive use date, March 16, 2015, and the dispositive question for purposes of the pending motion is, as the defendant argues, whether the evidence shows it used its mark before the plaintiffs' constructive use date.

The defendant implies "use" has an ordinary meaning as used in §§ 1057(c)(1) and 1115(b)(5). (Doc. 17 at p.8). However, it is clear "use" in this context means activity sufficient to establish ownership of a mark under common law. *See* 2 MCCARTHY, *supra*, § 16:17 ("A party who alleges a use prior to an

opponent's constructive use date must prove its priority under the traditional rules of common law trademark priority."); *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 986 F. Supp. 253, 258-60 (D. Del. 1997) (analyzing whether plaintiff demonstrated actual use of mark preceding defendant's constructive use date under common law trademark rules), *aff'd*, 186 F.3d 311 (3d Cir. 1999). Courts in the Eleventh Circuit apply a two-part test to determine whether a party has demonstrated use of a mark sufficient to establish common law ownership. *Planetary Motion*, 261 F.3d at 1195 (adopting test articulated in *New Eng. Duplicating Co. v. Mendes*, 190 F.2d 415 (1st Cir. 1951)). There must be evidence of (1) adoption of the mark and (2) " 'use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.'" *Id.* (quoting *Mendes*, 190 F.2d at 419).

What activities satisfy the public identification prong of the test is decided on a case-by-case basis, considering the totality of the circumstances. *Id.* There are, however, guideposts for the inquiry. Merely using a mark in connection with preliminary steps taken to launch a business generally does not evidence use establishing ownership. *Maritec Indus., Inc., v. Sterling Powerboats, Inc.*, 2004 WL 3403353, at *3 (M.D. Fla. Nov. 16, 2004). Sale of the goods or services bearing the mark is typical and " 'highly persuasive'" evidence of use. *Planetary Motion*, 261 F.3d at 1196 (quoting *New West Corp. v. NYM Co. of California, Inc.*,

595 F.2d 1194, 1200 (9th Cir. 1979)). Nonetheless, advertising, publicity, and solicitation may establish sufficiently public use in the absence of sales, provided these activities "have substantial impact on the purchasing public." *FN Herstal SA v. Clyde Armory, Inc.*, 838 F.3d 1071, 1081 (11th Cir. 2016) (internal quotation marks omitted) (adding that "[a]t the very least, [these activities] must be . . . open and notorious or of such a nature and extent that the mark has become popularized in the public mind so that the relevant segment of the public identifies the marked goods with the mark's adopter" (internal quotation marks omitted)). While wide public recognition is not required, secret or *de minimis* use is generally inadequate. *Planetary Motion*, 261 F.3d at 1196.

Guided by the foregoing, it is clear questions of fact preclude a determination the defendant made sufficiently public use of its mark before March 16, 2015, to establish ownership. The defendant's legal formation, purchase of software, acquisition of Internet domains, and retention of an architectural firm to design its physical office space and a construction company to build out that space were preparatory steps for doing business, and the defendant has not shown they caused the public to identify the defendant with the goods and/or services bearing its mark. *See Maritec Indus.*, 2004 WL 3403353, at *4 (holding that preliminary steps taken by party to launch its business, including designing its product, buying business cards and letterhead bearing its mark, and meeting with individuals to

plan marketing and business strategies, did not constitute use sufficient to establish ownership); *Brookfield Comms., Inc. v. West Coast Ent. Corp.*, 175 F.3d 1036, 1051-52 (9th Cir. 1999) (holding that registration of domain name did not constitute use for purpose of acquiring trademark priority because mark is not meritorious of trademark protection until used in public manner that creates association among consumers between mark and mark's owner); *George Washington Mint, Inc. v. Washington Mint, Inc.*, 349 F. Supp. 255, 260 (S.D.N.Y. 1972) (holding that "[t]he prior incorporation of the defendant, in itself, does not establish priority of trademark use"); *see generally* 2 MCCARTHY, *supra*, § 16:12.

The additional evidence the defendant has submitted regarding use of its mark falls short of demonstrating its entitlement to common law trademark rights as a matter of law. While that evidence shows that between April 2014 and January 2015 the defendant began using the WTW mark to promote it business, the defendant has not offered sufficient specifics regarding the magnitude, public reach, or efficacy of these efforts. For example, while the defendant has submitted evidence it purchased 500 pens, 500 water bottles, 3,000 plastic bags, 4,000 business cards, 1,000 pieces of letterhead, 1,000 envelopes, and 300 cards bearing its mark, it does not indicate how many of these items it actually distributed to the purchasing public or otherwise suggest what impact this and other non-sales activity, including advertising, had on the public. Similarly, it does not state how

many privately-labeled products it sold.  The absence of these facts precludes a determination on summary judgment that during the period at issue the defendant made use of its mark in a way that distinguished goods and services bearing the WTW mark as those of the defendant in the public's mind.  *Compare Planetary Motion, Inc.*, 261 F.3d at 1196-97 (affirming district court's finding of use sufficient to establish ownership where, among other things, distribution of mark was widespread because it was accessible to anyone with access to the Internet, members of public actually associated mark with product to which it was affixed, and other potential users of mark had notice that it was being used in connection with that product), *FN Herstal*, 838 F.3d at 1081-82 (affirming district court's finding of use sufficient to establish ownership where party entered into ten-year contract to sell more than $634,000 worth of combat assault rifles to government, contract received extensive media attention, and party showcased rifles for public purchase at hundreds of trade shows and events, including one where it was " 'the number one talked about firearm'"), *and Direct Niche, LLC v. Via Varejo S/A*, 898 F.3d 1144, 1150-51 (11th Cir. 2018) (affirming district court's finding of use sufficient to establish ownership where online retailer rendered advertising services on its website in conjunction with its mark and website received millions of visits each year), *with Maritec Indus.*, 2004 WL 3403353, at *4 (holding that party's claim it distributed 4,000 brochures bearing its mark did not establish ownership

where party was insufficiently specific about where and to whom brochures were distributed), *and Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334, 1369-70 (M.D. Fla. 2017) (holding that "[s]imply operating a website that is accessible to every person in the United States does not confer common law trademark rights on the owner for the entire United States," and that party's failure to produce any data regarding number of customers who visited or purchased goods bearing its mark through its website precluded determination party established ownership of mark through online sales), *appeal dismissed*, 2018 WL 1957605 (11th Cir. Mar. 13, 2018).[7]

## IV. Conclusion

For the foregoing reasons, the defendant's motion seeking dismissal under Rule 12(b)(6) or, alternatively, summary judgment under Rule 56 (Doc. 8) is **DENIED**.

**DONE** this 15th day of August, 2019.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[7] To the extent the defendant's citation to *Dudley v. Healthsource Chiropractic, Inc.*, 883 F. Supp. 2d 377 (W.D.N.Y. 2012), is meant to support an argument its pre-March 16, 2015 activities constitute use sufficient to establish trademark rights, the undersigned declines to accept this case as persuasive authority. *See Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985) (holding that "authority from one circuit of the United States Court of Appeals is not binding upon another circuit").